NOT DESIGNATED FOR PUBLICATION

No. 118,833

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v

ZEBULIN RICHARD BARRON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed February 1, 2019. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and LEBEN, JJ.

PER CURIAM: When a defendant over the age of 18 is convicted of aggravated indecent liberties against a child under age 14, the presumptive sentence is life in prison with no possibility for parole for 25 years. But the defendant can seek a lesser sentence— called a departure sentence—and the court can grant that departure sentence if "substantial and compelling reasons" support it.

Zebulin Richard Barron appeals the district court's denial of his motion for a departure sentence after his conviction for aggravated indecent liberties with a child. He argues that the district court should have found substantial and compelling reasons to depart from his acceptance of responsibility, lack of past offenses, employment record,

community support, and other factors. But evidence before the district court showed that Barron minimized his wrongful conduct and had abused more than one child. We conclude that a reasonable person could agree with the district court's decision, so it did not abuse its discretion in denying Barron's request for a departure sentence. We therefore affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Barron pleaded no contest to one count of aggravated indecent liberties with a child in violation of K.S.A. 2017 Supp. 21-5506(b)(3)(A), which applies when the victim is younger than 14. In the plea, Barron admitted that he was over the age of 18 at the time of the offense and the victim, A.C., was under the age of 14. When she testified at Barron's 2017 sentencing hearing, A.C. was 10; the offense was alleged to have occurred between December 1, 2012, and December 31, 2014, when A.C. was between 6 and 8. Barron would have been between 37 and 39 during that period.

At the plea hearing, the State detailed the evidence that would have been presented at trial—evidence both about the abuse of A.C. and about abuse of two other girls. The allegations about A.C. arose after her father, Kyle C., contacted the Shawnee County Sheriff's Office on March 3, 2015. He reported that Barron had sexually abused his daughter, A.C., who is also Barron's niece.

The Shawnee County Sheriff's Office conducted an investigation in cooperation with Texas officers because the C. family currently resides in Texas. The investigation showed that Kyle, his wife Ginger, and A.C. spent Christmas 2012 and 2014 in Auburn, Kansas, at a relative's house. A.C. told investigators that Barron had sexually abused her during these gatherings.

2

A.C. described that in 2012 and in 2014, Barron showed her his penis. According to A.C., Barron showed her his penis and "plac[ed] his hand on . . . what she described as her private part, and which was concluded to be her vagina." A.C. also stated that Barron showed her pornography, and that afterwards, she and Barron acted out the videos by "placing her hands on his penis and rubbing his penis. [Barron] also placed his penis in [A.C.'s] mouth during these incidents." Other family members confirmed that during these visits, A.C. and Barron spent "considerable amounts of time [alone] . . . watching [Barron's] iPad and watching TV together."

The State also detailed evidence that it would have presented at trial about similar acts of abuse Barron had committed against two other girls. The court had ruled that this testimony would be admissible under K.S.A. 2017 Supp. 60-455(d). H.M. would have testified that one night she awoke and found Barron "rubbing her breasts and her vagina underneath her clothing." At the time of this alleged conduct, Barron was 20 years old and dating H.M's older sister, and H.M. was 12. Evidence also would have been presented that in 2012, while V.M. was three years old, Barron "pulled her pants down and licked her bottom, on her skin." This allegedly occurred while attending a house church in Tennessee.

After Barron acknowledged that he understood this evidence, the district court asked him if he understood that at sentencing, the district court did not have to provide leniency. Barron stated that he understood:

> "[THE COURT:] There may be certain arguments made at the time of sentencing that may ask for certain leniencies. I want to be sure you understand as it's stated in the agreement, the Court is not required to grant any leniency. The Court has full authority to impose the maximum sentence allowed by law in every case. Do you understand that?
> "THE DEFENDANT: Yes, Your Honor."

3

The district court then accepted Barron's no-contest plea to the crime of aggravated indecent liberties with a child.

Before sentencing, Barron moved for a departure sentence. He asked for a dispositional departure to probation (rather than imprisonment) and that his underlying prison sentence be shortened to 59 months, the length that would have been called for under our state's sentencing guidelines for a severity-level 3 felony for a person with no past criminal offenses. Because Barron was over 18 and A.C. was under 14, his crime was an off-grid offense subject to a presumptive sentence of life in prison with no possibility of parole for 25 years. See K.S.A. 2017 Supp. 21-6627(a)(1)(C); K.S.A. 2017 Supp. 21-5506(b)(3).

In his motion for a departure sentence, Barron listed several circumstances he argued justified the departure:

"1. . . .Barron has no prior felony convictions. . . .
"2. Barron has an impressive employment record. . . .
"3. Barron has been involved in exceptional charity and community activities. . . .
"4. Barron has supportive family and community. . . .
"5. Barron has accepted responsibility as illustrated by his plea in this case. . . .
"6. Barron has the responsibility to financially support his three children . . . .
"7. [Barron's] [r]ehabilitation efforts and [a]menability to rehabilitate. . . .
"8. Removal of . . . Barron from his three children's lives would be detrimental to them. . . .
"9. Barron suffered extraordinary physical abuse as a [c]hild. . . .
"10. Barron was exposed to extreme domestic violence. . . .
"11. Barron shows extreme remorse. . . .
"12. Barron has been incarcerated since his arrest . . ., and during that time his wife has divorced him and he has had no contact with his three children; with whom he was very close. He is a broken man."

At sentencing, A.C., Kyle C., and Ginger C. provided victim-impact statements, psychologist Seth Wescott testified on Barron's behalf, and the district court considered letters written on Barron's behalf, including several from fellow jail inmates. The State recommended that the district court follow the statutory presumption and sentence Barron to "a life sentence for this case." More specifically, the State requested "that the life sentence be served . . . for a minimum of 25 years before [Barron is] eligible for parole, [and] that the Court impose lifetime registration."

A.C. testified that since Barron abused her, she must listen to Christian music to fall asleep at night "instead of the bad thoughts that made [her] sick." She testified that she "felt powerless" and "hopeless" and that she and her parents "cr[ied] so many times." A.C. stated that since her abuse she has problems "show[ing] [her] emotions sometimes because [she] bur[ies] them so deep inside."

Ginger addressed several of the mitigating factors addressed in Barron's motion. She claimed that Barron had lied about his employment and falsified several prior positions and jobs. She also said that Barron had abused his position at a charity. Ginger's main point was that Barron had not fully accepted responsibility for his actions; she noted that he had pleaded no contest, not guilty. Kyle's testimony largely reiterated Ginger's.

Psychologist Seth Wescott, director of the Sex Offender Treatment Program at Clinical Associates, testified on Barron's behalf. Wescott performed a psychosexual evaluation on Barron, which "include[d] psychological testing, intelligence testing, risk assessment, [and] a review of records and a clinical interview." As a result of this assessment, Wescott "recommended that . . . Barron participate in and complete a sexual offender treatment program, that [Barron] complete and process a detailed sexual history . . ., and participate in a polygraph . . . ." Wescott also recommended that Barron complete individual mental health counseling. Finally, Wescott determined that Barron

5

should "have no contact with minors, to include familial minors, until such time as clinical assessment does not preclude such contact."

Along with these findings, Wescott diagnosed "child sexual abuse" and "a pedophilic disorder." Wescott also identified several issues including Barron's "denial and minimization of sexual wrongdoing in these circumstances." Wescott said that Barron admitted to "sexually touching" H.M., who he knew was 12 or 13 at the time.

In his report, Wescott included portions of Barron's handwritten account of the events with A.C. Wescott read this excerpt to the court to explain his concern that Barron was minimizing his own role in the crime against A.C.:

> "He indicated [A.C.] was overly affectionate and always seemed to gravitate toward him. 'I was affectionate in return, as I would be to family, but no more. Mostly, I secretly got drunk and tried to seclude myself. [A.C.] found me alone watching TV. There was a romantic scene and I was a little aroused. She ran and jumped on my lap. She grabbed my cro[t]ch and asked 'what's that?' I made her stop. She said, 'Don't worry, I won't tell.' I was depressed, sexually repressed, drunk and without care. I let her explore me. I wanted to feel something, anything. It was wrong and I'm ashamed.'"

Wescott said that this portrayal was concerning because it minimized Barron's role in the events. Wescott separately related that when he asked Barron what he had done, Barron told Wescott that he had "'put [his] hand on her butt. She touched me. She placed my hand on her front. She kissed me on the mouth. That was about it.'" This description concerned Wescott because it described A.C., a young child, as the actor, not Barron.

After hearing the evidence, including testimony from Barron, and argument from the attorneys, the district judge denied Barron's motion for a departure sentence. The court said that it did not find mitigating circumstances that were substantial and compelling, which is required for a departure:

6

"I've considered . . . Mr. Wescott's report and everything that has been presented, and I do not find that the factors that have been offered for mitigating factors, either any alone or in combination, constitute substantial and compelling reasons for a departure. I'm going to deny your departure motion.

"I do note that Mr. Wescott indicated that you're struggling with accepting responsibility. You tend to minimize the offending and deviant behavior. You blame extraneous circumstances and even engage in somewhat victim blaming. I know your recovery is a process, and Mr. Wescott indicated that that is not unusual at this stage of the proceeding, but I do note those are comments that are made. I just simply cannot find based upon your presentation today that there are substantial and compelling reasons for a departure."

The district court sentenced Barron to the sentence provided by statute—life imprisonment without the possibility for parole for 25 years.

Barron has appealed his sentence to our court.

ANALYSIS

Barron pleaded no contest to one count of aggravated indecent liberties with a child in violation of K.S.A. 2017 Supp. 21-5506(b)(3)(A). This statute defines aggravated indecent liberties with a child as "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 2017 Supp. 21-5506(b)(3)(A). Under this statute, the crime "is an off-grid person felony, when the offender is 18 years of age or older" at the time of the offense. K.S.A. 2017 Supp. 21-5506(c)(3).

7

The off-grid sentence is then set out in K.S.A. 2017 Supp. 21-6627(a)(1)(C). It provides that when a defendant who is 18 years of age or older and is convicted of aggravated indecent liberties with a child under 14 years old, that defendant "shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years."

For a first-time conviction, though, the sentencing judge may depart from the mandatory minimum term if the judge finds "substantial and compelling reasons" and states those reasons on the record. K.S.A. 2017 Supp. 21-6627(d)(1). In considering such substantial and compelling reasons, the statute provides a nonexclusive list of factors that might be mitigating circumstances in a given case:

> "(A) The defendant has no significant history of prior criminal activity;
> "(B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;
> "(C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;
> "(D) the defendant acted under extreme distress or under the substantial domination of another person;
> "(E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and
> "(F) the age of the defendant at the time of the crime." K.S.A. 21-6627(d)(2)(A)-(F).

A "substantial" mitigating factor is "'something that is real, not imagined; something with substance and not ephemeral.' [Citations omitted.]" *State v. Jolly*, 301 Kan. 313, 323, 342 P.3d 935 (2015). A "compelling" factor "essentially forces the court, based on the facts of the case, to 'leave the status quo or go beyond what is ordinary.'" *State v. Harden*, No. 118,103, 2018 WL 3194519, at *5 (Kan. App. 2018) (unpublished opinion) (quoting *Jolly*, 301 Kan. at 323). These mitigating factors are nonexclusive, and

8

the court may recognize other considerations. See *State v. Rife*, No. 109,732, 2014 WL 1707822, at *2 (Kan. App. 2014) (unpublished opinion). When a district court considers these factors, it should first "(1) determine whether any mitigating circumstances exist (without considering any aggravating circumstances); and (2) if mitigating factors do exist, determine whether they rise to the level of substantial and compelling reasons to depart given the facts of the case." *State v. Sullivan*, No. 114,369, 2016 WL 4413563, at *2 (Kan. App. 2016) (unpublished opinion) (explaining the two-factor test from *Jolly*, 301 Kan. 323-24).

On appeal, Barron claims the district court abused its discretion when it denied his motion for a downward departure in sentencing. Barron argues that he "provided substantial and compelling reasons for the granting of a departure," including the enumerated reasons above and concluded that "the court abused its discretion in finding that those mitigating circumstances did not constitute substantial and compelling reasons for a departure." Barron is correct that appellate courts apply the abuse-of-discretion standard to determine whether a district court was correct when it determined that mitigating factors weren't substantial and compelling reasons for a departure. See *State v. Trevino*, 290 Kan. 317, 322, 227 P.3d 951 (2010).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court or (2) the decision was based on an error of fact or law. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Barron doesn't claim that the district court's ruling was affected by a factual or legal error, so the question before us is whether a reasonable person could have agreed with the district court's conclusion that the mitigating circumstances Barron cited didn't provide a substantial and compelling basis for a departure sentence.

Here, the district court followed the two-step *Jolly* procedure and did not abuse its discretion. First, the district court determined whether mitigating factors existed in

9

Barron's case. Second, the district court acknowledged those factors and determined that they did not rise to the level of substantial and compelling reasons.

The district court need not address every mitigating factor raised by the defendant. See *State v. Tumberg*, No. 116,608, 2018 WL 3795395, at *6-7 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* September 10, 2018. But the court here noted most of the factors Barron claimed as mitigating circumstances and explained why they were not substantial and compelling:

> "The Court is being asked to consider a departure motion. You have argued several mitigating factors, presented those to the Court, which include several letters from fellow inmates who indicate that you're a positive influence in the jail during your contacts with them. You are somewhat of a leader as far as counseling and discussing the religious issues, and it is obvious through communications that they made that they are appreciative of that.
>
> "Also some of them suggest that you serve as a model when people get upset, you are an influence that tends to bring peace to the environment. Those are the nature of the mitigating factors that you've indicated from those who have written letters.
>
> "You have also argued several additional points. I've considered . . . Mr. Wescott's report and everything that has been presented, and I do not find that the factors that have been offered for mitigating factors, either alone or in combination, constitute substantial and compelling reasons for a departure. I'm going to deny your departure motion.
>
> "I do note that Mr. Wescott indicated that you're struggling with accepting responsibility. You tend to minimize the offending and deviant behavior. You blame extraneous circumstances and even engage in somewhat victim blaming. I know your recovery is a process, and Mr. Wescott indicated that that is not unusual at this stage of the proceeding, but I do note those are comments that are made. I just simply cannot find

based upon your presentation today that there are substantial and compelling reasons for a departure."

While the district court didn't specifically mention each mitigating factor Barron cited, the court said that it had considered "Wescott's report *and everything that has been presented*" before making its determination. This suggests that the district court correctly carried out the first step of the *Jolly* process—weighing Barron's mitigating factors to determine whether they were substantial and compelling. See *Tumberg*, 2018 WL 3795395, at *8-9. The court did not find that Barron had fully accepted responsibility, citing Barron's minimization of his "offending and deviant behavior." Barron pleaded no contest; he did not plead guilty and directly admit his conduct. See *State v. Marley*, No. 114,623, 2016 WL 4063923, at *2 (Kan. App. 2016) (unpublished opinion) ("[A] plea of no contest does not, as a matter of law, constitute an acceptance of responsibility."), *rev. denied* 306 Kan. 1326 (2017).

We conclude that a reasonable person could agree with the district court. See *State v. Ashbaugh*, No. 116,426, 2017 WL 5180845, at *5 (Kan. App. 2017) (unpublished opinion) (noting that "simply taking responsibility [for a crime] does not necessarily translate to mitigation"), *rev. denied* 308 Kan. 1596 (2018); *Rife*, 2014 WL 1707822, at *2 (noting that although the defendant apologized, "he showed no recognition of the harm he caused"). We therefore find no abuse of discretion.

We affirm the district court's judgment.